**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

**YSMARIE RIVERA,** on behalf of herself and all others similarly situated,

Plaintiff,

**-v.-**

**OATS OVERNIGHT, INC.**

Defendant.

-------------------------------------------------------------x

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff **YSMARIE RIVERA**, ("Plaintiff" or "Ms. Rivera,") individually and on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by and through her undersigned counsel, **Robert Schonfeld, Esq.** of JOSEPH & NORINSBERG, LLC, brings this action against Defendant, **OATS OVERNIGHT, INC.** ("Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*., arising from Defendant's failure to ensure that its ecommerce Website, www.oatsovernight.com is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff, **Ysmarie Rivera**, is a resident of Bronx County and is permanently disabled due to legal blindness. Ms. Rivera suffers from complete blindness in both eyes with no light perception, as certified by her examining ophthalmologist, Dr. Vinayak Mishra, on the New York State Office of Children and Family Services Report of Legal Blindness, dated September 10, 2025. Dr. Mishra confirmed that Ms. Rivera meets the statutory definition of legal blindness under both State and Federal standards. This diagnosis entitles her to all privileges, protections, and accommodations afforded to individuals who are legally blind. Exhibit A

2. Ms. Rivera is a proficient user of screen-reading technology, including **JAWS**,

**NVDA**, and **VoiceOver**, and relies exclusively on keyboard navigation to access digital content independently. Because she cannot visually perceive website content, she depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive elements, and programmatically determinable navigation. For blind consumers such as Ms. Rivera, accessible coding is not optional—it is the **only** means by which they can independently access the internet.

3. As a legally blind individual, Ms. Rivera relies heavily on nutritionally balanced, pre-portioned food products to maintain independence and daily functioning. Oats Overnight's single-serve, high-protein oatmeal packets are uniquely important to her because they allow her to prepare meals safely without relying on complex cooking steps, sharp utensils, or visually intensive kitchen tasks. All of Oats Overnight's products—including individual packets, bundles, and subscription-based recurring shipments—are sold exclusively online, making Defendant's website the only practical means for her to research and purchase these products independently.

4. Millions of Americans live with significant visual impairments, including more than two million who are legally blind. In New York alone, hundreds of thousands of residents are blind or visually impaired. Congress enacted the Americans with Disabilities Act to eliminate discrimination against individuals with disabilities and to ensure full integration, independent living, and equal opportunity. These protections extend to digital spaces. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web.

5. The internet has become indispensable for modern life. It is a primary means of shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take

for granted.

6. Screen-reading software works by converting digital content into synthesized speech or refreshable Braille. For this technology to function, website content must be capable of being rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain broken ARIA references cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites and are denied equal access to the goods and services offered.

7. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines ("WCAG 2.1"), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

8. Plaintiff brings this civil action against **Oats Overnight, Inc.**, for its failure to design, construct, maintain, and operate its highly interactive retail website, www.oatsovernight.com, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of full and equal access to its website—and therefore to the goods and services offered therein—constitutes a violation of Plaintiff's rights under Title III of the ADA, 42 U.S.C. § 12181 et seq.

9. On multiple occasions in March and April 2026, Plaintiff attempted to access Defendant's website using screen reading technology in order to research and purchase several Oats Overnight products, including single-serve high-protein oatmeal packets, multi-flavor bundles, and subscription-based recurring shipments. These products are sold exclusively online, making Defendant's website the only practical means for Plaintiff to independently obtain product

information and complete a purchase.

10. Despite multiple attempts, Plaintiff was unable to independently complete her objectives due to persistent access barriers. Automated **SortSite** audits of the exact pages Plaintiff attempted to access—including the **Products**, **Custom Bundle**, **About Us**, **Contact**, **FAQ**, **Privacy**, **Reviews**, **Store Locator**, **Subscribe**, **Sweepstakes**, and **Terms** pages—revealed broken links**,** missing alternative text**,** empty buttons**,** empty links**,** missing form labels**,** multiple form labels**,** missing fieldsets**,** skipped heading levels**,** ARIA violations**,** videos without pause controls**,** and severe color-contrast failures**.** These barriers prevented Plaintiff from obtaining the same product information available to sighted users. Exhibit B

11. The accessibility barriers were pervasive across the pages Plaintiff attempted to use. For example, the SortSite report identified broken links across 54 pages, including repeated failures on product pages, About Us, Careers, Contact Us, Privacy, Reviews, Store Locator, Subscribe, Sweepstakes, and Terms. The homepage contained a video that played longer than five seconds without a pause control, violating WCAG 2.2.2. Numerous images lacked alt text or used placeholder alt text such as "S'mores," violating WCAG 1.1.1. Links and buttons lacked accessible names, violating WCAG 2.4.4 and 4.1.2. Visual labels such as "Learn More," "Contact," and "Add Dessert" were not included in accessible names, violating WCAG 2.5.3. Severe contrast failures were present across 39 pages, violating WCAG 1.4.3 and 1.4.6. These findings confirm that the website is not coded in a manner compatible with screen reader technology.

12. Defendant operates a retail ecommerce platform through which consumers can browse oatmeal products, review product-specific information, and purchase items directly online. Plaintiff specifically sought out Defendant because of its high-protein single-serve oatmeal packets, multi-flavor bundles, and subscription-based recurring shipments—products uniquely suited to her needs as a legally blind consumer who relies on accessible digital interfaces and descriptive labeling

to make informed purchasing decisions. Defendant's failure to provide an accessible website denied her equal access to the goods and services it provides to nondisabled customers.

13. Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that www.oatsovernight.com becomes and remains accessible to blind and visually impaired users. Plaintiff remains genuinely interested in purchasing the products offered by Defendant and intends to return to the website as soon as it is remediated so that she may independently browse and obtain information about products for herself and her household. Without remediation, Plaintiff and other blind consumers remain excluded from equal participation in Defendant's online marketplace.

**JURISDICTION & VENUE**

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*.

15. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

16. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in New York County which is within this District, and accessed Defendant's website from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where the plaintiff experiences the discriminatory denial of access to a website. See, *Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); see also *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

17. Defendant is subject to personal jurisdiction in this District because it purposefully directs business activities toward New York consumers through its highly interactive ecommerce website, www.oatsovernight.com which allows users to browse inventory, review product information, create accounts, and complete purchases. Defendant ships products directly to New York residents and derives substantial revenue from sales to consumers in this State. Courts in this Circuit have consistently held that operators of nationwide ecommerce websites are subject to personal jurisdiction in New York when they purposefully avail themselves of the privilege of conducting business here. See *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

18. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online

19. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## <u>THE PARTIES</u>

20. Plaintiff YSMARIE RIVERA is, and at all relevant times was, a resident of New York County, New York. Ms. Russo is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As confirmed by her examining ophthalmologist, Ms. Russo suffers from diabetic retinopathy with visual field limitation in the better eye of less than 20 degrees, a permanent condition that meets the criteria for legal blindness under State and Federal standards and requires the use of screen-reading software to access digital content independently.

21. Plaintiff is a proficient user of screen-reader technology, including NVDA and JAWS, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because she cannot visually interpret printed or digital information without assistive technology, Ms. Russo depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen-reading software.

22. For Ms. Rivera, nutritionally balanced, pre-portioned food products are essential tools for daily life. As a legally blind individual, she relies heavily on single-serve, high-protein oatmeal packets because they allow her to prepare meals safely without relying on visually intensive kitchen tasks, complex cooking steps, or sharp utensils. Oats Overnight's products—including individual packets, multi-flavor bundles, and subscription-based recurring shipments—are uniquely suited to her needs as a blind consumer who depends on accessible digital interfaces and descriptive labeling to make informed purchasing decisions.

23. Upon information and belief, Oats Overnight, Inc. is a domestic corporation organized under the laws of the State of Delaware, with a formation date of September 5, 2018, and a registered agent located at United Corporate Services, Inc., 800 North State Street, Suite 304, Dover, Delaware 19901. Defendant owns, operates, and controls the commercial website www.oatsovernight.com, through which it markets, displays, and sells single-serve oatmeal packets, multi-flavor bundles, subscription-based recurring shipments, and related products to consumers throughout the United States, including residents of New York.

## NATURE OF ACTION

24. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing commercial website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of New York, attempted to access Defendant's website using screen reading software but encountered

multiple access barriers that prevented meaningful engagement with its goods and services. Defendant's failure to design, construct, and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

25. Defendant's website functions as a commercial place of public accommodation subject to Title III of the ADA and the protections afforded under New York State and New York City law. At all relevant times, Oats Overnight, Inc. has maintained control over the design, coding, and digital infrastructure of www.oatsovernight.com and is responsible for ensuring its compliance with applicable accessibility standards, including WCAG 2.1 Level AA. Although the website contains promotional content and interactive features, it lacks meaningful ARIA labeling, semantic structure, alternative text, and keyboard operability across key components. These deficiencies render the website inaccessible to blind users and place Defendant on constructive notice of noncompliance.

26. The internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike. Defendant's website is not merely informational; it is the exclusive gateway through which consumers must browse, evaluate, and purchase Defendant's single-serve oatmeal packets, multi-flavor bundles, and subscription-based recurring shipments. Without accessible digital access, blind consumers are unable to locate, evaluate, or independently purchase Defendant's products.

27. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access

the internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

28. Plaintiff is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As documented in her Report of Legal Blindness dated September 10, 2025, Plaintiff suffers from complete blindness in both eyes with no light perception and relies exclusively on screen reading software such as JAWS, NVDA, and VoiceOver to access digital content independently.

29. Plaintiff attempted to access Defendant's website on multiple occasions in March and April 2026 from her residence in New York. During these visits, she sought to browse product offerings, evaluate single-serve oatmeal packets, review multi-flavor bundles, and complete purchases for herself. These items were selected based on their nutritional value, ease of preparation, and suitability for her daily needs as a legally blind individual. However, she encountered persistent access barriers—including unlabeled buttons, inaccessible form fields, broken keyboard navigation, missing alt text, placeholder alt text, inaccessible video content, and inaccessible pop-ups—that prevented her from completing any transaction without sighted assistance.

30. These barriers are documented in independent accessibility audits conducted using SortSite. The reports identify WCAG 2.1 Level A and AA violations across 54 pages, including broken links, missing alternative text, empty buttons, empty links, missing form labels, multiple form labels, missing fieldsets, skipped heading levels, ARIA violations, videos without pause controls, missing language attributes, and severe contrast failures. These reports place Defendant on constructive notice of noncompliance and confirm that the website remains inaccessible to blind users.

31. Plaintiff was specifically interested in purchasing Defendant's single-serve high-protein oatmeal packets, multi-flavor bundles, and subscription-based recurring shipments, all marketed as convenient, nutritious, and easy-to-prepare meal options. These products were of particular interest because they represent safe, accessible food choices suitable for Plaintiff's daily use. Due to the website's failure to provide accessible product descriptions, navigable purchase flows, and properly labeled interactive elements, Plaintiff was unable to independently evaluate or purchase any of these items.

32. Plaintiff selected Oats Overnight over other food brands because of its reputation for high-protein, nutritionally balanced products and its emphasis on convenience and ease of preparation—major considerations for Plaintiff, who relies on tactile cooking methods and simplified meal preparation due to her blindness. She remains interested in purchasing these products and intends to return to the website once it is remediated. Defendant's ongoing failure to provide equal access constitutes a denial of goods and services and causes ongoing deterrence.

33. Plaintiff has suffered concrete harm, including exclusion, frustration, and loss of autonomy. These injuries are directly traceable to Defendant's conduct and are redressable through injunctive relief. Plaintiff's encounters with Defendant's inaccessible website demonstrate standing under Title III of the ADA: she attempted to access the website on multiple occasions, was deterred by systemic barriers, remains eager to return once it is accessible, and was prevented from purchasing essential food products due to Defendant's negligence and failures.

## STATEMENT OF FACTS

34. Between February 10, 2026, and April 22, 2026, Plaintiff Ysmarie Rivera attempted on three separate occasions to access Defendant's website, www.oatsovernight.com, using the NVDA screen reader on her home computer in the Bronx. On February 10, 2026, Plaintiff navigated to the "Products" page and the "Custom Bundle" page for the specific purpose of browsing Oats

Overnight's full range of single-serve oatmeal packets, comparing flavors, and identifying products that would meet her unique needs as a legally blind individual who relies heavily on pre-portioned, easy-to-prepare meals for safe daily functioning.

35. Plaintiff sought to review the list of available products, including high-protein single-serve oatmeal packets, multi-flavor bundles, and subscription-based recurring shipments. She intended to review product names, flavor descriptions, nutritional information, pricing, ingredient lists, and suitability for her dietary needs. She also sought to understand differences between flavor categories such as Best Sellers, Vegan, Chocolate, Dessert, Fruity Mix, Team Favs, and Ice Cream, all of which were advertised on the homepage.

36. During this visit, Plaintiff encountered multiple barriers that prevented her from independently evaluating the product offerings. The SortSite report for the Products and Custom Bundle pages identified missing alternative text, placeholder alt text, empty buttons, empty links, missing form labels, multiple form labels, broken ARIA references, skipped heading levels, and severe contrast failures. These technical failures manifested in concrete ways for Plaintiff:

- Many product images and promotional graphics were announced only as "image" or "graphic" with no meaningful alternative text, depriving Plaintiff of information about flavor distinctions, packaging, and product features.
- Interactive controls such as "Add Best Sellers," "Add Vegan," "Add Chocolate," "Add Dessert," "Add Fruity Mix," "Add Team Favs," and "Add Ice Cream" were flagged with missing form labels, multiple form labels, and broken ARIA references. NVDA announced these controls inconsistently or not at all, making it impossible for Plaintiff to understand how to add items to her bundle or what options were available.
- The homepage contained a video that played longer than five seconds without a pause control, violating WCAG 2.2.2. NVDA repeatedly announced dynamic content

out of context, disrupting navigation and preventing Plaintiff from forming a coherent mental map of the page.

Because of these barriers, Plaintiff could not reliably navigate the product grid, understand how many products were available, or determine which flavors might be suitable for her needs. NVDA would announce headings such as “Shop Now” and “Try our flavor in development,” but intervening product cards were often presented as a confusing sequence of unlabeled links, repeated “Reviews” links, and partially announced text. Plaintiff was unable to select specific products for further review.

37. On March 8, 2026, Plaintiff returned to Defendant’s website to research the “Custom Bundle” page in greater detail. Plaintiff was particularly interested in creating a multi-flavor bundle that included Chocolate Peanut Butter Banana, Blueberry Cobbler, Caramel Cold Brew, and Fruity Cereal, all of which were advertised on the website. For a blind consumer like Ms. Rivera, pre-portioned oatmeal packets are especially important because they provide tactile reliability, simplified meal preparation, and nutritional consistency.

38. Plaintiff sought to review flavor descriptions, ingredient lists, allergen information, nutritional values, pricing, and subscription options. She also wanted to confirm whether the bundle could be customized with multiple flavors and whether subscription discounts applied to her selections.

39. During this visit, Plaintiff encountered pervasive accessibility barriers that prevented her from independently evaluating the Custom Bundle page. The SortSite report identified missing alternative text, empty links, empty buttons, broken ARIA references, multiple form labels, and severe contrast failures. These issues translated into specific functional barriers:

• Key product images lacked alternative text. NVDA announced these elements only as “image,” providing no information about flavor categories or product distinctions.

- Flavor selectors and quantity selectors were coded with ARIA attributes such as aria-label and aria-controls, but SortSite simultaneously reported missing form labels and broken ARIA references. As a result, some controls were announced clearly while others were announced only as “button” or “link” without context, making it difficult for Plaintiff to understand how to customize her bundle.
- The “Add to Cart” button and subscription information were embedded in dynamic regions flagged with ARIA issues. NVDA would sometimes announce shipping estimates or subscription discounts out of context, causing confusion and making it difficult to locate the primary purchase controls.
- The page contained multiple headings and promotional blocks, but SortSite reported skipped heading levels and inconsistent semantic structure. NVDA would jump unpredictably between sections, making it hard for Plaintiff to follow the logical flow of information.

Because of these barriers, Plaintiff was unable to determine critical information about the Custom Bundle, including how to select flavors, how to adjust quantities, and whether subscription discounts applied. She could not confidently identify or activate the “Add to Cart” button and was unable to complete a purchase.

40. On April 22, 2026, Plaintiff made a third attempt to use Defendant’s website, this time to research individual flavor pages such as Chocolate Peanut Butter Banana, Blueberry Cobbler, and Caramel Cold Brew. Plaintiff was interested in these products because they are marketed as high-protein, nutritionally balanced, single-serve meals suitable for daily use.

41. Plaintiff sought to review flavor descriptions, nutritional information, ingredient lists, allergen warnings, pricing, and subscription options. She also wanted to understand differences between flavor categories and whether certain flavors were available only through bundles or

subscriptions.

42. The SortSite report for the individual product pages identified missing alternative text, empty links, multiple form labels, empty buttons, broken ARIA references, contrast failures, and redundant links. These issues created concrete barriers for Plaintiff:

• Product images lacked meaningful alternative text. NVDA announced these elements in ways that provided no useful information about flavor distinctions or packaging.

• Flavor selectors and subscription options used ARIA attributes, but SortSite simultaneously reported missing form labels and broken ARIA references. As a result, Plaintiff could not be sure whether she had successfully selected a flavor or whether additional options were available.

• The "Add to Cart" button and associated purchase information were embedded in dynamic regions with repeated shipping messages and ARIA role issues. NVDA would sometimes announce controls without clear labels, making it difficult for Plaintiff to identify the primary purchase action.

• The "Reviews" section contained interactive controls flagged with ARIA issues and redundant alternative text. NVDA's focus would jump unpredictably between review controls, share buttons, and rating summaries, making it difficult for Plaintiff to read reviews or understand overall customer feedback.

Because of these barriers, Plaintiff was unable to determine whether the selected flavors would meet her nutritional needs. She could not reliably identify or activate the "Add to Cart" button, could not confirm pricing or subscription details, and was again unable to complete a purchase.

Systemic barriers confirmed by SortSite Reports

43. The SortSite accessibility validation report for https://oatsovernight.com confirmed that the barriers Plaintiff encountered were systemic across the website. The report identified issues at Level A, Level AA, and Level AAA, including missing alternative text, improper heading structure, unlabeled links, broken ARIA references, insufficient color contrast, and focus outline problems. These findings corroborate Plaintiff's lived experience: Defendant's website is not designed, constructed, maintained, or operated in a manner that is compatible with screen reader technology.

44. The combination of missing alternative text, unlabeled and orphaned form controls, broken ARIA references, improper heading structure, contrast failures, and redundant or generic links prevents blind users from perceiving, navigating, and interacting with the website on equal terms with sighted users.

45. Because Oats Overnight's products are nutritionally balanced, pre-portioned meal options that are particularly important to blind users—who rely on simplified meal preparation, tactile reliability, and consistent nutritional content—the impact of these barriers on Plaintiff is especially severe. Defendant's inaccessible website resulted in the loss of the opportunity for Plaintiff to purchase the specific products she sought at the time she sought them and continues to deter her from attempting to use the website until it is remediated.

46. Plaintiff remains highly interested in purchasing Oats Overnight's products and intends to return to the website as soon as it is made accessible. Plaintiff's intent to return is concrete and credible because: (a) she continues to require high-protein, pre-portioned meals to support her daily life as a blind individual; (b) Oats Overnight's products, including Chocolate Peanut Butter Banana, Blueberry Cobbler, and Caramel Cold Brew, are uniquely marketed and not widely available in physical stores; (c) she has no alternative means of independently evaluating or

purchasing these specific products without an accessible website; and (d) she has demonstrated a history of attempting to access the website for the purpose of making a purchase. However, the persistent barriers she encountered deter her from attempting to use the website again until it is remediated. Plaintiff's injury is ongoing because Defendant continues to operate an inaccessible website without a policy or plan to ensure accessibility

47. Defendant's failure to design, construct, maintain, and operate its website in a manner compatible with screen reader technology constitutes discrimination under Title III of the ADA. Defendant's inaccessible website denies blind consumers equal access to the goods and services it offers to the general public and prevents blind users from participating in the digital marketplace on equal terms.

## CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

49. All legally blind individuals in the United States who have attempted to access www.oatsovernight.com and, as a result of Defendant's failure to design, construct, maintain, and operate the website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

50. Plaintiff also seeks certification of a New York subclass consisting of:

> All legally blind individuals residing in the State of New York who have attempted to access www.oatsovernight.com and were denied equal access to the goods, services, and information offered thereon.

51. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant operates a nationwide ecommerce platform and markets its single-serve

oatmeal packets, multi-flavor bundles, and subscription-based recurring shipments to consumers throughout the United States. Upon information and belief, thousands of blind and visually impaired individuals have attempted to access www.oatsovernight.com and have been denied equal access due to the systemic accessibility barriers confirmed by SortSite audits.

52. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

Whether Defendant's Website contains accessibility barriers that prevent blind individuals from accessing its goods and services;

Whether Defendant's failure to make its Website accessible violates Title III of the ADA;

Whether Defendant's failure to maintain accessible digital content violates New York State and New York City disability rights laws;

Whether Defendant's conduct constitutes ongoing discrimination against blind consumers; and

Whether injunctive relief is warranted to require Defendant to bring its Website into compliance with WCAG 2.1.

53. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, uses screenreading software, and was denied equal access to Defendant's Website due to the same systemic accessibility barriers identified in the SortSite and WAVE reports.

54. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in ADA litigation, class actions, and digital accessibility matters.

55. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate an inaccessible Website without any policy, plan, or practice to ensure accessibility, thereby subjecting all blind users to the same discriminatory barriers.

56. Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate its Website in compliance with WCAG 2.1, and because Defendant's actions apply generally to all blind individuals who attempt to use the Website. Declaratory and injunctive relief is the only appropriate remedy to ensure equal access for Plaintiff and the Class.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

57. Plaintiff, **YSMARIE RIVERA,** on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

58. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

59. Defendant's Website, www.oatsovernight.com is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

60. Defendant has failed to design, construct, maintain, and operate its website in a

manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

61. Defendant's website contains numerous accessibility barriers—including missing alternative text, broken ARIA references, unlabeled buttons, inaccessible pop-ups, improper heading structure, and aria-hidden focusable content—that prevent blind users from perceiving, navigating, and interacting with the website.

62. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

63. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

64. The acts alleged herein constitute violations of Title III of the ADA and the

regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, www.oatsovernight.com has not been provided services that are provided to other patrons who are not disabled; and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility anomalies through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

65. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

66. Plaintiff, **YSMARIE RIVERA,** on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

67. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

68. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

69. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.oatsovernight.com within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

70. Plaintiff has visited the Website, www.oatsovernight.com on a number of occasions and has encountered barriers to his access that exist.

71. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

72. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

73. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled

and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

74. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

75. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

76. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

77. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

78. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

79. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

80. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes Defendant denies, that Defendant's website contains access barriers denying blind customers full and equal access to the products, services, and facilities offered through the website.

81. A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

82. Plaintiff, **YSMARIE RIVERA,** on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

83. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

84. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

85. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

86. § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions

that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

87. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.oatsovernight.com is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

88. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

89. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

90. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id...*

91. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

92. Plaintiff, **YSMARIE RIVERA,** on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

93. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee,

proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

94. Defendant is subject to NYCHRL because it owns and operates the Website, www.oatsovernight.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

95. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

96. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

97. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or

obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

98. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

99. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

100. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

101. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

102. Plaintiff is also entitled to reasonable attorneys' fees and costs.

103. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

104. Plaintiff, **YSMARIE RIVERA,** on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

105. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

106. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.;
- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.oatsovernight.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;
- A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing her counsel as Class Counsel;

- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
August 19, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**

*<u>/s/ Robert Schonfeld</u>*
Robert Schonfeld, Esq.
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889